## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

ELAINE WANG,

                Plaintiff,

v.

TESARO, INC., LAWRENCE ALLEVA, JAMES ARMITAGE, EARL COLLIER, JR., MARY LYNNE HEDLEY, DAVID MOTT, LONNIE MOULDER, GARRY NICHOLSON, KAVITA PATEL, BETH SEIDENBERG, PASCALE WITZ, GLAXOSMITHKLINE PLC, and ADRIATIC ACQUISITION CORPORATION,

                Defendants.

--------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1. This is an action brought by Plaintiff against TESARO, Inc. ("TESARO or the "Company") and the members TESARO's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed acquisition of TESARO by GlaxoSmithKline plc and its affiliates ("GlaxoSmithKline," and collectively with the Company and the Individual Defendants, the "Defendants").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement (the "Solicitation Statement") to be filed on December 14, 2018 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Adriatic Acquisition Corporation ("Merger Sub"), a wholly owned subsidiary of GlaxoSmithKline, will merge with and into TESARO with TESARO surviving the merger as a wholly owned subsidiary of GlaxoSmithKline (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), Merger Sub has commenced a tender offer (the "Tender Offer") to acquire all of TESARO's outstanding common stock for $75.00 per share. The Tender Offer will expire on January 14, 2019.

3.      As described herein, the Merger Consideration undervalues TESARO's stock and the consideration TESARO stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company.  Defendants have now asked TESARO's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) TESARO's financial projections, relied upon by the Company's financial advisors , Citigroup Global Markets Inc. ("Citi") and Centerview Partners LLC ("Centerview") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that

support the fairness opinions provided by Citi and Centerview. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d) and 20(a) of the Exchange Act as TESARO stockholders need such information in order to decide whether to tender their shares.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TESARO's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d) and 20(a) of the Exchange Act and SEC Rule 14d-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because TESARO is incorporated in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of TESARO common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Lawrence Alleva ("Alleva") has served as a member of the Board since March 2012.

11.     Individual Defendant Dr. James Armitage has served as a member of the Board since May 2013.

12.     Individual Defendant Earl Collier, Jr. ("Collier") has served as a member of the Board since May 2014.

13.     Individual Defendant Mary Lynne Hedley, Ph.D. ("Hedley") co-founded the Company in March 2010 and has been its President and Board member since March 2010 and Chief Operating Officer since July 24, 2014. Hedley has also served as the Chief Scientific Officer from March 2010 to July 24, 2014.

14.     Individual Defendant David M. Mott ("Mott") has served as a member of the Board since May 2010 and as the Chairman of the Board since July 2011.

15.     Individual Defendant Lonnie Moulder ("Moulder") co-founded the Company in March 2010 and has been its Chief Executive Officer and Board member since March 2010.

16.     Individual Defendant Garry A. Nicholson ("Nicholson") has served as a member of the Board since May 2015.

17.     Individual Defendant Dr. Kavita Patel has served as a member of the Board since April 2016.

18.     Individual Defendant Beth Seidenberg ("Seidenberg") has served as a member of the Board since June 2011.

19.      Individual Defendant Pascale Witz has served as a member of the Board since May 2018.

20.      Defendant TESARO is incorporated in Delaware and maintains its principal offices at 1000 Winter Street, Waltham, Massachusetts 02451.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "TSRO."

21.      Defendant GlaxoSmithKline is a British company and maintains its principal offices at 980 Great West Road, Brentford, Middlesex TW8 9GS United Kingdom. GlaxoSmithKline's common stock trades on the New York Stock Exchange under the symbol "GSK."

22.      Defendant Adriatic Acquisition Corporation is a Delaware corporation and is a wholly-owned subsidiary of GlaxoSmithKline, formed solely for the purposes of effectuating the Proposed Transaction.

23.      The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

24.      The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction Undervalues TESARO**

25.      TESARO is an oncology-focused biopharmaceutical company. The Company operates through the business of developing and commercializing of oncology-focused therapeutics segment. The Company is developing oncology-related product candidates, including rolapitant, niraparib and the product candidates under its immuno-oncology platform.

26.      On December 3, 2018, the Company and GlaxoSmithKline jointly announced the Proposed Transaction:

LONDON and WALTHAM, Mass., Dec. 03, 2018 (GLOBE NEWSWIRE) -- GlaxoSmithKline plc (LSE/NYSE: GSK) and TESARO Inc (NASDAQ: TSRO) today announced that the Companies have entered into a definitive agreement pursuant to which GSK will acquire TESARO, an oncologyfocused company based in Waltham, Massachusetts, for an aggregate cash consideration of approximately $5.1 billion (£4.0 billion). The proposed transaction significantly strengthens GSK's pharmaceutical business, accelerating the build of GSK's pipeline and commercial capability in oncology.

TESARO is a commercial-stage biopharmaceutical company, with a major marketed product, Zejula (niraparib), an oral poly ADP ribose polymerase (PARP) inhibitor currently approved for use in ovarian cancer. PARP inhibitors are transforming the treatment of ovarian cancer, notably demonstrating marked clinical benefit in patients with and without germline mutations in a BRCA gene (gBRCA). Zejula is currently approved in the US and Europe as a treatment for adult patients with recurrent ovarian cancer who are in response to platinum-based chemotherapy, regardless of BRCA mutation or biomarker status. Clinical trials to assess the use of Zejula in "all-comers" patient populations, as a monotherapy and in combinations, for the significantly larger opportunity of first line maintenance treatment of ovarian cancer are also underway. These ongoing trials are evaluating the potential benefit of Zejula in patients who carry gBRCA mutations as well as the larger population of patients without gBRCA mutations whose tumours are HRD-positive and HRD-negative. Results from the first of these studies, PRIMA, are expected to be available in the second half of 2019. GSK also believes PARP inhibitors offer significant opportunities for use in the treatment of multiple cancer types. In addition to ovarian cancer, Zejula is currently being investigated for use as a possible treatment in lung, breast and prostate cancer, both as a monotherapy and in combination with other medicines, including with TESARO's own anti-PD-1 antibody (dostarlimab, formerly known as TSR-042). In addition to Zejula, TESARO has several oncology assets in its pipeline including antibodies directed against PD-1, TIM-3 and LAG-3 targets.

\* \* \*

Financial highlights The acquisition price of $75 per share in cash represents a 110% premium to TESARO's 30 day Volume Weighted Average Price of $35.67 and an aggregate consideration of approximately $5.1 billion (£4.0 billion) including the assumption of TESARO's net debt. Zejula's revenues in its current

approved indication as second-line maintenance treatment for ovarian cancer were $166 million for the 9 months ended 30 September 2018. GSK expects the acquisition of TESARO and associated R&D and commercial investments will impact Adjusted EPS for the first two years by mid to high single digit percentages, reducing thereafter with the acquisition expected to start to be accretive to Adjusted EPS by 2022. GSK's guidance for full-year 2018 Adjusted EPS growth remains unchanged at 8 to 10% at CER. GSK continues to expect to deliver on its previously published Group Outlooks to 2020, but following the acquisition of TESARO now expects Adjusted EPS growth at CER for the period 2016-2020 to be at the bottom end of the mid to high single digit percentage CAGR range. Guidance and Group Outlooks are given on the bases set on pages 37 and 38 of GSK's Q3 2018 results, including definitions of CER growth and Adjusted results. GSK confirms no change to its current dividend policy and continues to expect to pay 80p in dividends for 2018. GSK expects to fund the acquisition from cash resources and drawing under a new acquisition facility. Structure and Terms of the Transaction Under the terms of the merger agreement between GSK and TESARO, unanimously approved by TESARO's Board of Directors, a subsidiary of GSK will commence a tender offer within the next 10 business days to acquire all of the issued and outstanding shares of TESARO common stock for a price of $75 per share in cash upon completion of the offer. The transaction is expected to complete in the first quarter of 2019, subject to satisfaction of customary closing conditions, including the tender by TESARO stockholders of at least one share more than 50% of the issued and outstanding shares of TESARO and required regulatory approvals, including clearance by the US Federal Trade Commission. Following closing of the tender offer, GSK will acquire any shares of TESARO that are not tendered in the tender offer through a second-step merger under Delaware law at the tender offer price. The value of the gross assets of TESARO to be acquired (as at 30 September 2018) is $711 million (£555 million at the rate of £1 = $1.28, being the 30 November spot rate). The net losses of the business were $466 million for the 9 months ended 30 September 2018 (£345 million, at the rate of £1 = $1.35, being the average rate for the 9 months ended 30 September 2018). GSK is in discussions with several key executives of TESARO to ensure their continued employment with the company.

\* \* \*

27.    The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, November 1, 2018,

TESARO announced stellar third quarter results. The Company reported that in the third quarter of 2018, the Company has launched several initiatives to grow the use of Zejula for recurrent ovarian cancer and its net sales totaled $63 million compared to $39 million in the same quarter in 2017.

28.    Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by limiting their ability to benefit from the Company's continued growth.

29.    Despite the inadequate Merger Consideration, the Board has agreed to the Proposed Transaction.  It is therefore imperative that TESARO's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests to tender their shares.

**B.     The Background of the Merger**

30.    In July 2017, the Company was nearing FDA approval for its blockbuster drug Zejula, and asked Citi to contact "realistic potential acquirers" to gauge interest. The Company had discussions with four companies by the end of June 2017. The discussions did not lead to any meaningful bids on the Company. The Company also at this time suffered a decrease in stock price along with the rest of the biotech industry, and was running out of cash to implement its stand-alone plan.

31.    In May 2018, a private equity firm contacted TESARO and expressed interested in a buyout, while defendant Hedley was reaching out to strategic parties for potential marketing deals for Zejula. Party A submitted a nonbinding written proposal on October 19 for a global collaboration agreement on Zejula for $1.79 billion. Defendant Hedley asked for an increase and Party A submitted another offer for $2.34 billion.

32.     At the same time, defendant Moulder was in talks with GlaxoSmithKline for a potential acquisition of the Company and a $66 per share deal was on the table. Finally, on November 21, after a Bloomberg story on a potential sale emerged, GlaxoSmithKline increased its offer to $75 per share. The parties quickly executed the Merger Agreement.

C.      **The Materially Incomplete and Misleading Solicitation Statement**

33.     On December 14, 2018, TESARO and GlaxoSmithKline jointly filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

34.     With respect to the financial projections disclosed in the Solicitation Statement, the Solicitation Statement fails to provide material information.

35.     For the Company Management Case A and Case B Forecasts, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures. Solicitation Statement at 57.  EBIT and Unlevered Free Cash Flow are non-GAAP measures as contemplated by Regulation G.

36.     When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their

corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

37.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

38.     The Solicitation Statement on page 58 also fails to disclose projected cash flows for "Product-Level Forecasts."

39.     Thus, to cure the Solicitation Statement the materially misleading nature of the forecasts as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Solicitation Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

40.     With respect to Citi's *Selected Public Companies Analysis*, the Solicitation Statement fails to disclose the individual multiples utilized by Citi in the analysis and whether any benchmarking against the Company was performed.  A fair summary of this analysis requires the disclosure of the individual multiples for each company.  Merely providing a range of values that a banker applies is insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value.  Accordingly, the omission of this material information renders the summary of the analysis provided in the Solicitation Statement misleading. Solicitation Statement at 31-32.

41.     With respect to Citi's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for each transaction selected by Citi. A fair summary of this analysis requires the disclosure of the individual multiples for each transaction.  Merely providing a range of values that a banker applies is insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value. Accordingly, the omission of this material information renders the summary of the analysis provided in the Solicitation Statement misleading. Solicitation Statement at 32-33.

42.     With respect to Citi's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the calculation of the discount rate range of 10.8% to 12.9%, including the weighted average cost of capital; (ii) a reconciliation of after tax unlevered free cash flows to its most comparable GAAP compliant financial measure; (iii) line items used in its calculation; (iv) the inputs and assumptions underlying the selected range of

terminal value using the range of perpetuity growth rates of negative 2.00% to positive 2.00%; and (v) the terminal values calculated.  Solicitation Statement at 33.

43.     With respect to Citi's *Sum-of-the-Parts Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the calculation of the discount rate range of 10.8% to 12.9%, including the weighted average cost of capital; (ii) a reconciliation of after tax unlevered free cash flows to its most comparable GAAP compliant financial measure; (iii) line items used in its calculation; (iv) the inputs and assumptions underlying the selected range of terminal values for each product or product development candidate; and (v) the terminal values calculated.  Solicitation Statement at 33.

44.     With respect to Centerview's *Selected Public Companies Analysis*, the Solicitation Statement fails to disclose the individual multiples utilized by Centerview in the analysis and whether any benchmarking against the Company was performed.  A fair summary of this analysis requires the disclosure of the individual multiples for each company.  Merely providing a range of values that a banker applies is insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value.  Accordingly, the omission of this material information renders the summary of the analysis provided in the Solicitation Statement misleading.  Solicitation Statement at 41.

45.     With respect to Centerview's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for each transaction selected by Centerview. A fair summary of this analysis requires the disclosure of the individual multiples for each transaction.  Merely providing a range of values that a banker applies is insufficient, as shareholders are unable to assess whether the banker applied the appropriate

multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value. Accordingly, the omission of this material information renders the summary of the analysis provided in the Solicitation Statement misleading. Solicitation Statement at 42-43.

46.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the calculation of the discount rate range of 11.0% to 13.0%, including the weighted average cost of capital; (ii) a reconciliation of after tax unlevered free cash flows to its most comparable GAAP compliant financial measure; and (iii) line items used in its calculation.  Solicitation Statement at 33.

47.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

50.     As set forth above, Defendants filed and delivered the Solicitation Statement to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

51.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

53.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

54.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified

above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

55.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

56.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

57.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

58.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

59.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

60.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

61.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

62.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of TESARO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of TESARO, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TESARO, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TESARO, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

67.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

70.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 9, 2019                              **RIGRODSKY & LONG, P.A.**

                                              By:   */s/ Gina M. Serra*
                                                    _____
**OF COUNSEL:**                                     Brian D. Long (#4347)
                                                    Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**                          300 Delaware Avenue, Suite 1220
**FREEMAN & HERZ LLP**                              Wilmington, DE 19801
Gloria Kui Melwani                                  Telephone: (302) 295-5310
270 Madison Avenue                                  Facsimile: (302) 654-7530
New York, NY 10016                                  Email: bdl@rl-legal.com
Telephone: (212) 545-4600                           Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com                            *Attorneys for Plaintiff*